IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INDIANA INSURANCE COMPANY, an Indiana )
corporation, )
        Plaintiff, )
) No. 10 C 2660
   v. )
)
WESTFIELD INSURANCE COMPANY, an Ohio )
corporation, )
        Defendant. )

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

    Before the Court are Defendant Westfield Insurance Company's ("Westfield") motion to strike paragraphs 9-18 of the complaint, Rule 12(b)(6) motion to dismiss, and motion to strike portions of Plaintiff Indiana Insurance Company's ("Indiana") response to Westfield's Rule 12(b)(6) motion to dismiss. For the following reasons, the Court denies Westfield's motion to strike paragraphs 9-18 of the complaint, denies Westfield's motion to strike portions of Indiana's response, and grants Westfield's motion to dismiss.

**BACKGROUND**

    For the purpose of resolving the motion to dismiss, the Court assumes the following allegations are true. On November 30, 1996, a gas explosion occurred at the home of Kim Bowen in Downers Grove which resulted in two deaths, several injuries and property damage. (R. 1-1, Compl., ¶ 6.) The accident also resulted in the filing of eight lawsuits (collectively, the "Bowen Estate litigation"). The allegations in the Bowen Estate litigation asserted that Professional Plumbing, Inc. ("Professional Plumbing"), a subcontractor that conducted plumbing and gas delivery work, was negligent in its work at the Bowen premises, and that Richard

Smykal, Inc. ("Smykal"), the general contractor, was negligent in allowing Professional Plumbing to conduct its plumbing and gas delivery work at the Bowen premises. *Id.* at ¶¶ 6-8. At the time of the accident, Indiana insured Smykal, and Westfield insured Professional Plumbing. *Id.* at ¶¶ 1-2.

On March 25, 1998, Indiana tendered the defense of the Bowen Estate litigation to Westfield. *Id.* at ¶ 9. On May 19, 1999, Westfield refused to defend Smykal because it asserted that, as of the date of the accident, Professional Plumbing has completed its operations at the Bowen premises and the policy contained no "completed operations" coverage. *Id.* at ¶ 10. As a result, Smykal filed a third-party complaint for declaratory judgment against Westfield in a pending action in the Bowen Estate litigation between American States Insurance, Co. and Northern Illinois Gas, Co. in Illinois state court. *Id.* at ¶ 13, Ex. 4.[1]

On September 21, 2000, before the court ruled on the parties' cross-motions for summary judgment, Westfield wrote Smykal's attorney to accept the defense of Smykal and stated:

> [T]he defense is accepted without reservation as to coverage. . . . Westfield does, however, reserve its right to seek contribution, apportionment and/or reimbursement for any defense costs and/or other payments made on behalf of Smykal with regard to this litigation from any other insurance company which provides insurance coverage to Smykal with regard to the aforesaid lawsuit.

*Id.* at Ex. 6.[2] On September 29, 2000, Westfield withdrew its counterclaim for declaratory

---

[1] Indiana alleges that it was a party to the declaratory judgment action filed in state court. The face of the complaint filed in state court, however, reflects that Smykal filed the third-party complaint and that Indiana was not a party to the lawsuit. (R. 1-1, Compl. Ex. 4.) In the context of ruling on a 12(b)(6) motion to dismiss, "[w]here an exhibit and the complaint conflict, the exhibit typically controls." *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). "A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document." *Id.*

[2] In its Complaint, Indiana alleges that Westfield "wrote Indiana Insurance Co., through its attorneys, Condon & Cook." This allegation, however, conflicts with the exhibits attached to Plaintiff's complaint which show that Condon & Cook was Smykal's attorney in the state court declaratory judgment proceeding. (R. 1-1, Compl., Ex. 5.)

2

judgment against Smykal, and Smykal voluntarily dismissed its third-party complaint for declaratory judgment against Westfield. *Id.* at Ex. 5. Thereafter, on February 16, 2001, Westfield wrote Ralph Smykal, President of Smykal and stated:

> Westfield Companies has accepted the defense of Richard Smykal, Inc. . . . However, Westfield reserves its right to seek contribution, apportionment and/or reimbursement for any defense costs and other payments made on behalf of Smykal with regard to this litigation from any other insurance company which provides insurance coverage to Smykal with regard to the aforesaid lawsuit.

(R. 1-1, Compl., Ex. 7.)

Five years later, on May 7, 2006, the parties reached a settlement in the Bowen Estate litigation. *Id.* at ¶ 23. At the settlement conference, Westfield agreed that it would "square up" with Indiana once the Bowen Estate litigation was "put to rest and all releases and dismissal orders entered." *Id.* at ¶ 28. To settle the litigation, Indiana paid $2,525,000 on behalf of Professional Plumbing, and Westfield paid $2,250,000 on behalf of Smykal. *Id.* Westfield had two policies providing coverage for Professional Plumbing and its "additional insured", Smykal: (a) a CGL Policy with $1 million policy limits, and (b) a Commercial Umbrella Policy with $10 million policy limits. *Id.* at ¶ 24. Indiana also had two polices providing coverage for Smykal: (a) a CGL Policy with $1 million policy limits; and (b) a Commercial Umbrella Policy with $5 million policy limits. *Id.* at ¶ 25. Because Westfield agreed to provide the defense for Smykal without reservation as to coverage, once Indiana exhausted its $1 million in primary CGL policy limits, Westfield should have paid the remaining $1,250,000 under its $10 million Commercial Umbrella Policy limits. *Id.* at ¶ 27. Westfield has not paid the $1,250,000 owed for Smykal under its $10 million Commercial Umbrella Policy. *Id.* at ¶ 28.

Indiana seeks the following amounts as damages from Westfield: (i) $1,250,000 that Indiana paid but Westfield owes under its $10 million Commercial Umbrella Policy; (ii) $250,000 in interest; and (iii) $282,046.51 for defense fees and costs paid by Indiana to Condon & Cook for the defense of Smykal. *Id.* at ¶ 29.

## LEGAL STANDARD

### I. 12(b)(6) Motion to Dismiss

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570); *see also Cooney v. Rossiter*, 583 F.3d 967, 971

4

(7th Cir. 2009) (amount of factual allegations required to state a plausible claim for relief depends on complexity of legal theory). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir. 2009) (court construes complaint in light most favorable to plaintiff drawing all reasonable inferences in plaintiff's favor).

## II.     Motion to Strike

Rule 12(f) governs motions to strike. Pursuant to that Rule, the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike, however, are disfavored and will usually be denied." *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997). In order to succeed on a motion to strike allegations contained in a complaint, "the movant must show that 'the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration' and that the allegations are unduly prejudicial." *Id.* (citing *Trustmark Life Ins. Co. v. University of Chicago Hosps.*, No. 94 C 4692, 1996 WL 68009, at *1 (N.D. Ill. Feb.14, 1996)). The Seventh Circuit has "advise[d] defense counsel against moving to strike extraneous matter unless its presence in the complaint is actually prejudicial to the defense." *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001). "Prejudice results where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party." *Cumis*, 983 F. Supp. at 798 (citing *VPHI, Inc. v. National Educ. Training Group, Inc.*, No. 94 C 5559, 1995 WL 51405, at *3 (N.D. Ill. Jan. 20, 1995)).

5

ANALYSIS

I.  **Westfield's Motion to Strike Paragraphs 9-8 of Indiana's Complaint**

Westfield has moved pursuant to Rule 12(f) to strike the allegations contained in paragraphs 9-18 of Plaintiff's complaint. Paragraphs 9-18 of Indiana's complaint summarize proceedings in a related state court action between Indiana's insured, Smykal, and Westfield which ultimately resulted in a voluntary dismissal after the parties reached an agreement. Indiana contends that the allegations relating to that lawsuit are immaterial because the earlier declaratory judgment action, as a matter of law, has no bearing on Indiana and Westfield's duty to indemnify Smykal.

The Seventh Circuit has made clear, however, that a defendant must demonstrate prejudice in order to succeed on a motion to strike extraneous matter from a complaint. *Davis*, 269 F.3d at 821. Westfield only conclusorily asserts that "[t]his case meets that standard of prejudice" without any supporting explanation for that contention. (R. 14, Def.'s Mot. to Strike at 3.) Such conclusory assertions fail to demonstrate prejudice. *Davis*, 269 F.3d at 821. The Court accordingly denies Westfield's motion to strike.

II. **Westfield's Motion to Strike Portions of Indiana's Response to Westfield's Rule 12(b)(6) Motion to Dismiss**

In its response to Westfield's motion to dismiss, Plaintiff raises a series of arguments relating to a *John Burns* targeted or selective tender. (R. 20-1, Pls.' Resp. to Def.'s Mot. to Dismiss, pp. 5, 6, 10-11.) On July 1, 2010, subsequent to the filing of Plaintiff's response, the parties filed a stipulation in which Indiana stated that it does not claim a *John Burns* targeted or selective tender and that its "mentioning of a *John Burns* selective or targeted tender is by way of analogy and by way of discussion of cases cited by *Westfield*." (R. 21-1, Stipulation at 2.)

Because the stipulation makes clear that the discussion of a *John Burns* tender is merely an analogy and Indiana has again failed to demonstrate prejudice, the Court denies Indiana's motion to strike portions of Indian's response. *See Davis*, 269 F.3d at 821.

## III. Westfield's 12(b)(6) Motion to Dismiss

While titled a Complaint for Declaratory Judgment, Indiana contends that it sued Westfield for breach of contact and equitable subrogation. Even considering its complaint in this manner, however, Indiana has failed to state a claim upon which relief can be granted.

### A. Breach of Contract

To establish a breach of contract under Illinois law[3], a party must establish: (1) the existence of a valid and enforceable contract; (2) substantial performance of the contract; (3) breach of the contract; and (4) resultant damages. *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 286 Ill. Dec. 734, 814 N.E. 2d 960, 967 (Ill. App. Ct. 2004)). In Illinois, the determination of whether a contract is ambiguous, as well as the construction of an unambiguous contract, are questions of law for the court. *See Gallagher v. Lenart*, 226 Ill. 2d 208, 219, 314 Ill. Dec. 133, 140, 874 N.E. 2d 43, 50 (Ill. 2007); *Central Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153-54, 290 Ill. Dec. 155, 163, 821 N.E. 2d 206, 214 (Ill. 2004). "In Illinois, as in other states, if a contract is unambiguous, the court will enforce it as written, without resorting to extrinsic evidence." *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009). "The primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher*, 226 Ill. 2d at 232.

---

[3] The parties agree that Illinois law governs the breach of contract claim.

Illinois courts interpret contracts according to the "four corners" rule: "'[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined by the language used. It is not to be changed by extrinsic evidence.'" C*amico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992-93 (7th Cir. 2007) (quoting *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 878 (7th Cir. 2005) (citations and internal quotation marks omitted)). In applying this rule, Illinois courts first look to the language of the contract alone. *See Camico*, 474 F.3d at 993 (citing *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 236 Ill. Dec. 8, 10, 706 N.E. 2d 882, 884 (Ill. 1999)); *see also Gallagher*, 226 Ill. 2d at 233 ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent."). Illinois courts interpret contract terms according to their plain meaning unless otherwise defined. *See Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004).

Indiana claims that there "is a valid and enforceable written contract found in Westfield's two letters contracting to provide $1 million in CGL coverage and $10 million Umbrella coverage for Smykal and to undertake the defense 'without reservation as to coverage.'" (R. 20-1, Pls.' Resp., p. 7.) Indiana also asserts that the consideration for Westfield's promise to provide coverage for Smykal was Smykal and Indiana's dismissal of the state court action because Westfield agree to provide the coverage sought in that action. *Id.*

Despite these assertions, however, Indiana has not identified a contract to which it is a party. The September 21, 2000 letter is from Charles P. Menges at Westfield to Smykal's attorney. (R. 1, Complaint, Ex. 6.) In the letter, Mr. Menges states:

8

> [T]he defense is accepted without reservation as to coverage. . . . Westfield does, however, reserve its right to seek contribution, apportionment and/or reimbursement for any defense costs and/or other payments made on behalf of Smykal with regard to this litigation from any other insurance company which provides insurance coverage to Smykal with regard to the aforesaid lawsuit.

*Id.* Indiana is not a party to the letter, nor does the letter specifically reference Indiana. The February 16, 2001 letter is from Robert Hunt, Claims Specialist at Westfield, to Smykal. (R. 1, Compl., Ex. 7.) That letter similarly provides:

> Westfield Companies has accepted the defense of Richard Smykal, Inc. . . . However, Westfield reserves its right to seek contribution, apportionment and/or reimbursement for any defense costs and other payments made on behalf of Smykal with regard to this litigation from any other insurance company which provides insurance coverage to Smykal with regard to the aforesaid lawsuit.

*Id.* Gerald Kukta, of Indiana, is copied on the letter, but the letter does not specifically refer to Indiana.

Under Illinois law, "[a]n individual not a party to a contract may only enforce the contract's rights when the contract's original parties intentionally entered into the contract for the direct benefit of the individual." *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App.3d 1017, 1020, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009). "There is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties." *Id.* (citing *Barney v. Unity Paving, Inc.*, 266 Ill. App. 3d 13, 19, 203 Ill. Dec. 272, 639 N.E. 2d 592, 596 (Ill. App. Ct. 1994)). "That the contracting parties know, expect, or even intend that others will benefit from their agreement is not enough to overcome the presumption that the contract was intended for the direct benefit of the parties." *Id.* (citing *Barney*, 266 Ill. App. 3d at 19, 639 N.E. 2d at 596). Whether someone is a third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language." *Id.* (citing *F.H.*

9

*Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 372 Ill. App. 3d 89, 96, 865 N.E. 2d 228, 235 (Ill. App. Ct. 2007)).

Indiana fails to allege or explain its assertion that the letters between Westfield and Smykal form a contract to which it is a party. Because the "contract makes no mention of [Indiana] or the class to which [it] belongs, [it] is not a third-party beneficiary of the contract." *Id.* (citing *155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*, 209 Ill. App. 3d 631, 647, 568 N.E. 2d 365, 375 (Ill. App. Ct. 1991); *Swaw v. Ortell*, 137 Ill. App. 3d 60, 70, 484 N.E.2d 780, 787 (Ill. App. Ct. 1984)). Moreover, there is no indication in the language of the letters that Westfield and Smykal entered into the contract for the "direct, not merely incidental, benefit of [Indiana]." *Id.* Indeed, in both letters Westfield specifically reserved its rights of contribution and reimbursement against "any other insurance company which provides coverage to Smykal with regard to the aforesaid lawsuit," a group that includes Indiana.

Treating Indiana's allegations as true and drawing all inferences in its favor, Indiana has failed to sufficiently allege that it is a party to or a third-party beneficiary of the alleged contracts. *See Sieron v. Hanover Fire and Cas. Ins. Co.*, 485 F. Supp. 2d 954 (S.D. Ill. 2007) (dismissing plaintiff's breach of contract claims against insurance company where plaintiffs were not parties to any contract at issue and failed to set forth theory under which they could obtain relief for breaches of contracts to which they were not parties). Westfield's motion to dismiss is accordingly granted with respect to Indiana's breach of contract claim.

B.  **Equitable Subrogation**

Indiana also asserts that its claim for breach of contract pleads equitable subrogation.[4] To establish a right to equitable subrogation, Indiana must show: "(1) that the defendant is primarily liable to the insured for a loss under a policy of insurance; (2) that the plaintiff is secondarily liable to the insured for the same loss under its policy; and (3) the plaintiff discharged its liability to the insured and at the same time extinguished the liability of the defendant." *Chicago Hosp. Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange*, 397 Ill. App. 3d 512, 525, 925 N.E. 2d 1216, 1228 (Ill. App. Ct. 2010) (citing *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 316-17, 821 N.E. 2d 269 (2004)). Indiana contends that it meets the first prong of this test because: "Westfield was primarily liable to Smykal to pay the $1,250,000 under its Umbrella policy because: (a) Indiana made a *John Burns* targeted tender of Smykal's defense to it; and (b) it contracted to pay Smykal's defense 'without reservation as to coverage.'" (R. 20, Pls.'s Resp. at 10.) Since the filing of its response, Indiana has stipulated that it is not alleging that Indiana made a *John Burns* tender to Westfield. Indiana instead must rely on its contention that Westfield is primarily liable to Smykal for a loss under an insurance policy because it contracted with Indiana to pay Smykal's defense. In other words, Indiana's equitable subrogation claim also rests on the existence of a contract between it and Westfield. As described above, Indiana has failed to identify a contract with Westfield to which it was a party. The Court accordingly grants Westfield's motion to dismiss with respect to Indiana's equitable subrogation claim.

---

[4] Westfield argued in its motion to dismiss that Indiana failed to state a claim for equitable contribution. Because Indiana contends in its response that it is not pleading a claim for equitable contribution (R. 20, Pls.' Resp at 8.), the Court need not address this argument.

## CONCLUSION

For the foregoing reasons, denies Westfield's motion to strike paragraphs 9-18 of the complaint, denies Westfield's motion to strike portions of Indiana's response, and grants Westfield's motion to dismiss without prejudice.

DATED:  August 26, 2010                             ENTERED:

                                                    _____
                                                    AMY J. ST. EVE
                                                    United States District Court Judge