# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 2660 | **DATE** | 4/21/2011 |
| **CASE TITLE** | Indiana Insurance Co vs. Westfield Ins Co | | |

**DOCKET ENTRY TEXT**

The Court denies Plaintiff's motion for leave to file its second amended complaint [33], with prejudice.

■ [ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

   Plaintiff, Indiana Insurance Company ("Indiana"), seeks leave to file its Second Amended Complaint ("the proposed Complaint") pursuant to Federal Rule of Civil Procedure 15(a). (R. 33.) The proposed Complaint seeks damages in the amount of $1,532,046 with an interest rate of 5% per year or $62,500 per year from May 7, 2006, to present. (R. 33-1 at 18.) It alleges that a "written contractual agreement . . . signed in writing" existed between Defendant Westfield Insurance Company ("Westfield") and Indiana, as evidenced by Exhibits 6 and 7 to the proposed Complaint. (*Id.* at 17.) It further alleges that Westfield breached this agreement. (*Id.* at 18.)

   Previously, on August 26, 2010, the Court granted Westfield's motion to dismiss, finding that the original complaint failed to state a claim for breach of contract or for equitable subrogation. (R. 28.) On October 29, 2010, Indiana filed a motion for leave to file its first amended complaint. The Court denied this motion, without prejudice, on December 13, 2010, explaining that the first amended complaint failed plausibly to allege that Westfield breached a contract to which Indiana was either privy or an intended beneficiary. (R. 32.) Almost two months later, Indiana filed the motion for leave to file its Second Amended Complaint.

   Because Indiana's proposed Complaint does not cure the fatal deficiencies that underlay the prior complaints that failed to state a claim, the Court denies Indiana's motion. As Plaintiff has had two opportunities to amend its complaint, and because it is apparent that Plaintiff cannot cure the deficiencies that the Court has explained previously, the Court denies Indiana's motion for leave to file its Second Amended Complaint with prejudice. *Accord, e.g.*, *Mehta v. Beaconridge Home Improvement Assoc.*, No. 10-CV-2253, 2011 WL 494169, at *3 (N.D. Ill. Feb. 3, 2011) ("Because the court has granted Mehta leave to amend his complaint twice before, and because at this point it appears that Mehta can allege no set of facts consistent with the allegations of the Second Amended Complaint that would state a timely claim . . ., the complaint is dismissed with prejudice.").

| | Courtroom Deputy Initials: | KF |
|---|---|---|

# BACKGROUND

This case arises from an explosion that occurred at the home of Kim Bowen in 1996. (R. 28.) Subsequent litigation focused on the alleged negligence of general contractor, Richard Smykal, Inc., and subcontractor, Professional Plumbing, Inc. (*Id.* at 1-2.) At the time of the explosion, Indiana insured Smykal and Westfield insured Professional Plumbing. (*Id.* at 2.) After Indiana refused to defend Smykal, the latter filed a third-party complaint, seeking declaratory judgment. While the parties' cross-motions for summary judgment were pending, Westfield agreed to defend Smykal "without reservation as to coverage," though it did so reserving "its right to seek contribution, apportionment and/or reimbursement for any defense costs and/or payments made on behalf of Smykal[.]" (*Id.*)

Five years later, the Bowen Estate litigation settled. (*Id.* at 3.) In settling the litigation, Westfield paid $2,525,000 on behalf of Professional Plumbing and Indiana paid $2,250,000 on behalf of Smykal. (R 33-1 at 14.) As Defendant agreed to defend Smykal without reservation as to coverage, Indiana contends that Westfield should have paid $1,250,000 under its commercial umbrella policy after Indiana exhausted its $1 million commercial general-liability policy. (R. 33-1 at 17-18.) According to Plaintiff, Defendant has not paid that sum. (*Id.* at 18)

On April 30, 2010, Defendant removed the instant case from the Circuit Court of Cook County, premising the Court's jurisdiction upon diversity of citizenship. (R. 1.) The complaint "for declaratory judgment" sought recovery of damages from Defendant. (R. 1-2 at 4-15.) It alleged that Plaintiff had paid $1,250,000, which Defendant in fact owed under its commercial umbrella policy. (*Id.* at 14.) Plaintiff also sought $250,000 interest and $282,046.51 in defense fees and costs that it paid in the defense of Smykal. (*Id.* at 15.)

On May 21, 2010, Defendant filed a motion to dismiss, arguing, first, that the complaint, though purportedly seeking declaratory judgment, failed to plead facts showing that declaratory relief could be granted. (R. 16 at 6.) Defendant also argued that the complaint failed to state a claim for equitable subrogation or equitable contribution. (*Id.* at 7-11.) Finally, Defendant argued in the alternative that Plaintiff's claim for equitable contribution was time-barred. (*Id.* at 11-13.)

The Court granted Plaintiff's motion to dismiss on August 26, 2010, without prejudice. (R. 27.) The complaint did not state a claim for breach of contract because it failed either to identify a contract to which Indiana was privy or to show that Indiana was a third-party beneficiary of any contract. (R. 28 at 8-10.) Because Plaintiff's equitable-subrogation claim depended on the existence of a contract between it and Westfield, that claim, too, failed. The Court did not address the equitable-contribution issue in light of Plaintiff's representation that it was not pleading such a claim. (*Id.* at 11 n.4.)

On December 13, 2010, the Court denied Indiana's motion for leave to file its first amended complaint. (R. 32.) In doing so, it explained that the new letters that Indiana had attached to the first amended complaint did not plausibly suggest the existence of a contract between Indiana and Westfield or that Indiana was a third-party beneficiary of a contract to which Westfield, as promisor, was privy. (*Id.* at 3.) The Court also explained that neither the complaint nor the letters attached as exhibits alleged or showed that Westfield signed a writing evidencing the parties' alleged agreement. (*Id.*) Finally, the Court observed that the first amended complaint explicitly alleged that "Westfield reserves its right to seek contribution, apportionment and/or reimbursement for any defense costs and other payments made on behalf of Smykal with regard to this litigation from any other insurance company which provides insurance coverage to Smykal." (*Id.* at 4.)

On February 10, 2011, Indiana filed a motion for leave to file its second amended complaint. (R. 33.) For reasons explained below, the Court denies that motion, with prejudice.

# LEGAL STANDARD

The Federal Rules of Civil Procedure provide that, in circumstances such as those attendant to the instant motion, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The rule provides that the "court should freely give leave when justice so requires." *Id.* The Seventh Circuit has explained, however, that, "[a]lthough leave to amend should be freely given, that does

not mean it must always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (internal citations omitted). Indeed, "[d]istrict courts have broad discretion to deny leave to amend when there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

## ANALYSIS

**Indiana Fails to Cure the Deficiencies Highlighted by the Court in both its August 26, 2010, Opinion Granting Westfield's Motion to Dismiss and its December 13, 2010, Order Denying Indiana's Motion for Leave to File its First Amended Complaint**

For reasons explained immediately below, Indiana's proposed Complaint fails to cure the deficiencies that were present in the prior complaints. The Court therefore denies, with prejudice, Plaintiff's motion for leave to file its second amended complaint.

    A.    **The Proposed Complaint and Attached Exhibits Fail Plausibly to Allege the Existence of a Contract in which Westfield Agreed to Excuse Indiana from Paying any of the Costs Associated with Defending Smykal**

The proposed Complaint alleges that Indiana retained Condon & Cook to "represent its interests and the interests of its insured, Richard Smykal, Inc., to both defend Richard Smykal, Inc.[,] in the 'Bowen Estate Litigation' and to pursue additional insured coverage from . . . Westfield . . . for the benefit of both . . . Smykal . . . and for Indiana Insurance Co.'s benefit." (R. 33-1 at 4-5.) The Court previously found that Indiana's complaint and attached exhibits did not plausibly allege the existence of a written contract between the parties. (R. 32.) In its instant motion, Indiana argues that the proposed Complaint, and in particular Exhibits 6 and 7 to the same, solve this shortcoming. (R. 33 at 3-4.) Indiana suggests that the parties agreed that "Westfield, not Indiana, would pay any judgment in the 'Bowen Estate Litigation' for Smykal up to $10 million—Indiana would not have to pay under its $5 million Umbrella Policy." (*Id.* at 3.)

Plaintiff contends that Exhibits 6 and 7 together form a written contract. (R. 33 at 4.)

Exhibit 6 is a copy of September 21, 2000, letter from Westfield's attorney, Charles P. Menges, to J. Scott Gillman of Condon & Cook, which (according to the allegations of the proposed Complaint) Indiana hired both to defend Smykal and to pursue Westfield for additional insurance coverage for Smykal's and Indiana's benefit. (R. 33-1 at 45-46.) In that letter, Westfield accepted Smykal's defense "without reservation as to coverage." (*Id.* at 45.) Importantly, however, Westfield also "reserve[d] its right to seek contribution, apportionment and/or reimbursement for any defense costs and/or other payments made on behalf of Smykal with regard to this litigation from any other insurance company which provided insurance coverage to Smykal with regard to the aforesaid lawsuit." (*Id.*)

Exhibit 7 is a copy of a September 27, 2000 letter from Gillman to Menges, confirming an earlier telephone conference between them, as well as the September 21, 2000, letter (Exhibit 6.) (R. 33-1 at 47-48.) The September 27 letter conveys Condon & Cook's understanding that Westfield had accepted Smykal's tender of indemnity as well. (*Id.* at 47.)

Indiana's principal argument is that Westfield's agreement to accept Smykal's defense "without reservation as to coverage" amounted to an agreement that "Westfield agreed to pay any settlement judgment against Smykal (indemnity) and agreed to pay Smykal's defense fees and costs (excusing Indiana from doing the same)." (R. 33 at 4.) The proposed Complaint similarly alleges that the language in Westfield's agreement that "[t]his defense is accepted without reservation as to coverage" means that Westfield "will pay all defense fees and costs for Richard Smykal, Inc. and pay any settlement or judgment on behalf of Richard Smykal, Inc." (R. 33-1 at 13.)

Even viewed in the light most favorable to Indiana—and assuming that the correspondence represented by Exhibits 6 and 7 amounted to a contract between Indiana and Westfield, as opposed to one purely between

10C2660 Indiana Insurance Co vs. Westfield Ins Co Page 3 of 5

Westfield and Smykal—the proposed Complaint and attached Exhibits do not plausibly allege that Westfield agreed to excuse Indiana from paying Smykal's defense fees, costs, and any settlement judgment. *Cf. Atkins v. City of Chi.*, 631 F.3d 823, 831 (7th Cir. 2011) ("[T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid[.]").

First, the language "without reservation as to coverage" suggests only that Westfield agreed, first, that its insurance policies cover Smykal and, second, that it would accept Smykal's defense accordingly. Nothing in that phrase, or in the surrounding language in the relevant Exhibits, supports a plausible inference that Westfield agreed to relieve Indiana from making any contribution or reimbursement. Indeed, nowhere in its proposed Complaint, attached Exhibits, or motion for leave to file the same, does Plaintiff allege an instance in which Westfield explicitly agreed, in writing or otherwise, to excuse Indiana in this manner. Furthermore, Indiana does not cite any authority that suggests that "without reservation as to coverage" is a term of art that one in the insurance industry would read as not only meaning that an insurance company agrees that an insured is in fact covered by the relevant insurance, but that it agrees to excuse any other company that insures the same insured from any contribution.

Second, both the allegations of the proposed Complaint and the contents of the attached Exhibits foreclose Indiana's argument. In the September 21, 2000, letter in which Plaintiff alleges that Westfield agreed to excuse Indiana from paying any portion of defenses fees, costs, or a settlement or judgment, Westfield explicitly stated that it "reserve[d] its right to seek contribution, apportionment and/or reimbursement for any defense costs and/or other payments made on behalf of Smykal with regard to this litigation from any other insurance company which provided insurance coverage to Smykal with regard to the aforesaid lawsuit." (R. 33-1 at 9, 45.) There is no question that Indiana is an "insurance company which provided insurance coverage to Smykal with regard" to the relevant lawsuit. Thus, Westfield affirmatively stated that, although it was accepting Smykal's defense and would not question that its insurance policies covered Smykal, it maintained the right to seek contribution from "any other insurance company," including Indiana.

Indiana seeks to avoid this conclusion by arguing that "any other" refers to insurance companies other than Indiana and Westfield. (R. 33 at 6.) It supports this argument on the basis that "Westfield had already agreed to provide a defense for Smykal 'without reservation as to coverage' and knew Indiana represented Smykal." (*Id.*)

This argument fails. By submitting that Defendant had "already agreed," it is clear based on the plain language that Indiana refers to the fact that Westfield agreed to provide such a defense without reservation in the previous paragraph of its September 21, 2000, letter. (R. 33-1 at 45.) Immediately afterward, at the start of the very next paragraph, Westfield made clear that it was reserving its rights as to contribution, apportionment, and reimbursement. (*Id.*) In making this statement, Westfield was evidently clarifying the scope of its agreement to accept Smykal's defense without reservation as to coverage.[1] In other words, it was making clear that it was not agreeing to what Indiana now argues it did agree to, and there is no plausible inference otherwise.

In furtherance of its argument that "any other" does not include itself, Indiana also submits that "it is exceedingly unlikely that Defendant Westfield's attorneys . . . would say that Westfield would defend Smykal without reservation as to coverage in one sentence and then in the next sentence say Defendant Westfield reserves its right to seek coverage from Indiana . . ., to whom it already agreed to provide coverage." (*Id.* at 6-7.)

---

[1] The proposed Complaint alleges that the language in Westfield's September 21, 2000, letter (Exhibit 6) that "Westfield reserves its right to seek contribution, apportionment and/or reimbursement . . . from any other insurance company" means that "Westfield is reserving its rights to proceed against any other insurance company, except Indiana and Westfield." (*Id.* at 14.) This conclusory allegation does not undo the clear import of Exhibit 6. *See Forest v. Universal Sav. Bank*, 507 F.3d 540, 542 (7th Cir. 2007) ("Where an exhibit and the complaint's allegations conflict, the exhibit typically controls. The court is not bound by a party's characterization of an exhibit and may independently examine and form its own opinions about the document.").

There are numerous flaws with this argument. In the first place, it begs the question by assuming that Westfield's statement that it would provide a defense for Smykal "without reservation" amounts to an agreement not to seek a contribution from Indiana. Furthermore, and as explained above, the only plausible interpretation of this language is that Westfield agreed only that it would defend Smykal and not challenge Smykal's right to that defense. The "without reservation" language neither states nor implies any agreement by Westfield as to excusing Indiana.

In addition, Indiana submits that Exhibit 11 reveals that "any other insurance company" referred specifically to American States Insurance Co. (R. 33 at 6.) Exhibit 11, however, is an August 17, 2005, letter from John Jackson of Indiana to Robert Hunt of Westfield. (R. 33-1 at 54-55.) It is unclear how a letter from Indiana reveals what Westfield meant when it used the term "any other insurance company" several years previously. Regardless, the Court does not read Exhibit 11 as supporting a plausible inference that Westfield's statement as to "any other insurance company" did not include Indiana.

Indiana also submits that "when an insurer retains an attorney to represent its insured, a tri-partite relationship exists among the attorney and the insured and the insurer, and the attorney acts as the attorney and agent for both the insurer and insured, taking legal actions for both[.]" (R. 33 at 8.) In making this argument, Indiana seeks to demonstrate that Westfield's attorney's September 21, 2000, letter to Condon & Cook, attorneys for both Smykal and Indiana, Westfield entered into a contract with Indiana. (*Id.* at 8-9.) Assuming, *arguendo*, that Plaintiff is correct in this respect, such that the parties did enter into a contract, this would not demonstrate what the parties agreed to. As explained above, the proposed Complaint and accompanying Exhibits do not support a plausible inference that Westfield agreed with Indiana that it would excuse the latter from paying all relevant costs associated with the defense of their co-insured.

Last, though certainly not least, another Exhibit to the proposed Complaint reveals the absence of an agreement by Westfield to excuse Indiana. Exhibit 8 is a November 7, 2000, letter from Condon & Cook to Westfield. (R. 33-1 at 49-50.) In a "bps" to that letter, Condon & Cook wrote to Gerry Kukta of Indiana to the effect that "Westfield has agreed to assume the defense of your insured. Since the letter does not specifically mention that his will be on a *pro-rata* basis, we suggest that you *request* 100% reimbursement." (*Id.* at 50) (emphasis added). If Indiana and Westfield had in fact agreed in September of 2000 that the latter would provide the former 100% reimbursement, as Plaintiff maintains, then Condon & Cook would have had no occasion subsequently to write to Indiana advising that they request such reimbursement.

### B. The Court Denies Indiana's Motion for Leave to File its Second Amended Complaint with Prejudice

Indiana has had two opportunities to file a complaint that satisfies the requirements of Federal Rule of Civil Procedure 8(a). Each time, Plaintiff has had the benefit of this Court's explanation as to the deficiencies underlying Indiana's prior complaint. In light of Plaintiff's apparent inability to produce a complaint that states a claim for relief, the Court denies Indiana's motion for leave to file its second amended complaint with prejudice. *See Airborne Beppers & Video, Inc. v. AT&T Mobility L.L.C.*, 499 F.3d 663, 666 (7th Cir. 2007) ("[T]he district court spelled out for Airborne what deficiencies in the complaint needed to be remedied. Airborne's failure to fix those shortcomings provides ample grounds for dismissal."); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) ("[W]here the plaintiff has repeatedly failed to remedy the same deficiency, the district court [does] not abuse its discretion by dismissing the claim with prejudice.").

## CONCLUSION

For the preceding reasons, the Court denies, with prejudice, Indiana's motion for leave to file its second amended complaint.